## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | |
| ATM FINANCIAL SERVICES, LLC, | ) | Case No.  6:08-bk-969-KSJ |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | | |
| SONEET R. KAPILA, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 6:10-ap-53 |
| vs. | ) | |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

### MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT
### IN FAVOR OF THE INTERNAL REVENUE SERVICE

The Chapter 7 trustee, Soneet Kapila, filed this adversary proceeding and two motions for partial summary judgment[1] seeking to avoid the alleged fraudulent transfer of $536,686.91 from the debtor, ATM Financial Services, LLC, to the defendant, the Internal Revenue Service.  The IRS, in response, has filed a cross motion for summary judgment[2] raising the good faith defense provided to secondary or intermediate transferees under § 550(b) of the Bankruptcy Code.[3]  The IRS argues that, even admitting the transfer was fraudulent and avoidable under § 548 of the Bankruptcy Code, the Chapter 7 trustee nonetheless cannot recover from the IRS because it was not the "initial transferee" of the funds under § 550(a)(1) and because it has established its good faith defense provided by § 550(b).  The Court agrees and grants the IRS' motion.

---

[1] Doc. Nos. 1, 15, and 29.

[2] Doc. No. 18.

[3] All references to the Bankruptcy Code shall be to Title 11 of the United States Code.

The debtor, ATM Financial Services, LLC, fraudulently induced investors to contribute monies to fund ATM's fantasy business of managing and servicing thousands of automated teller machines allegedly placed in retail locations around the country. ATM, in reality, owned only a few machines and sold and re-sold the same machines over and over to new investors using new monies to pay returns to older investors. Both parties to this adversary proceeding agree that the debtor was run as a Ponzi scheme for a four-year period from February 12, 2004, to the date the debtor filed its bankruptcy petition, February 10, 2008. The debtor's principal, Vance Moore, Jr., is currently in federal prison for his role in the Ponzi scheme after pleading guilty to nine counts of wire fraud and one count of conspiracy to commit wire fraud.

Moore also owned other companies with operations at the same business address used by the debtor. One of these companies is Best Lab Deals, a Florida corporation ("BLD"). In March 2007, Revenue Officer Jose Bisbal was assigned by the IRS to collect unpaid Form 941 employment taxes owed by BLD for the quarterly periods ending June 30, 2006, and December 31, 2006, and also BLD's Form 940 annual unemployment taxes for the taxable years 2004 and 2006.[4] By searching the website of the Florida Department of State, Division of Corporations, Bisbal learned that Vance Moore, Jr., was the president, secretary, treasurer, and director of BLD, and that BLD was an active corporation.[5]

On March 22, 2007, the IRS sent BLD a letter entitled "Final Notice: Notice of Intent to Levy and Notice of Your Right to a Hearing."[6] The letter explained the IRS' intent to levy BLD's assets because of its failure to pay the employment and unemployment taxes.

On March 23, 2007, Bisbal made a field call to BLD's place of business.[7] He learned then that the debtor and other business entities, including BLD, operated out of the same address. By searching the website for the Florida Department of State, Division of Corporations, Bisbal learned

---

[4] Bisbal Dec. at ¶ 5 (Doc. No. 20).
[5] *Id.*
[6] *Id.* at ¶ 6, Ex. 3.
[7] *Id.* at ¶ 7.

that ATM Financial, LLC, was then an active limited liability company and that Moore was ATM Financial's manager and only member.[8]

On August 24, 2007, Moore, using his signature authority for ATM Financial's bank account no. 8809 at North State Bank, a North Carolina bank, purchased a cashier's check in the amount of $536,686.91 made payable to "U.S. Treasury."[9]  Printed on the cashier's check after the word "remitter" are the words "NSB 02" in type script, after which someone hand-wrote in pen the words "Best Lab Deals, Inc."[10]  That day, Moore mailed the cashier's check to the IRS, accompanied by a letter he signed on BLD letterhead, which stated: "Enclosed you will find my certified check in the amount of $536,686.91, payable to the U.S. Treasury."  The letter also directs the IRS to apply the check proceeds to BLD's outstanding Form 941 and Form 940 tax liabilities. The IRS received the cashier's check on August 27, 2007, and applied the check proceeds as directed.[11]

About eight months later, on February 10, 2008, ATM Financial filed this Chapter 11 bankruptcy case.  The case was converted to a Chapter 7 proceeding on June 20, 2009.  On February 10, 2010, the Chapter 7 trustee filed this adversary proceeding to recover the August 27, 2007, payment to the IRS as a fraudulent conveyance under Bankruptcy Code §§ 548(a)(1)(A), (B), or § 544(b) and Fla. Stat. §§ 726.105(1)(a),(b) or § 726.106(1).[12]  The trustee's complaint alleges that BLD's tax liability was paid for "by transfers of funds from the debtor's bank account to the

---

[8] Bisbal Dec. at Ex. 4.
[9] Exs. A, B, and C to Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. No. 28).
[10] Ex. B to Doc. No. 28.
[11] Bisbal Dec. at ¶ 11.
[12] Doc. No. 1.

defendant."  The trustee relies on the so-called Ponzi scheme presumption to establish the debtor's

actual intent to defraud other creditors,[13] which the IRS concedes.[14]

Both parties now seek summary judgment, agreeing no material facts are in dispute.[15]  The

Chapter 7 trustee's first motion for partial summary judgment[16] asks the Court to find: (1) that the

debtor was operating a Ponzi scheme for the four-year period prior to the petition date and that the

debtor therefore made the transfer to the IRS with actual intent to hinder, delay, or defraud creditors;

(2) the debtor was insolvent at the time of the transfer; (3) the debtor was not generally able to pay

its debts as they came due; and (4) the debtor was operating with an unreasonably small capital.

Because the IRS concedes these points, and because all of the evidence produced by the trustee

supports the trustee's contentions, the Court will grant partial summary judgment in favor of the

Chapter 7 trustee, finding the debtor fraudulently transferred funds under § 548 of the Bankruptcy

Code.  The only issue remaining is whether the trustee can recover the fraudulent transfer from the

IRS under § 550 of the Bankruptcy Code.

The IRS' motion for summary judgment argues that even if the transfer was fraudulent and

avoidable under § 548, the trustee cannot recover the funds from the IRS because BLD or Moore,

not the IRS, was the "initial transferee" for purposes of § 550(a).  As a mediate transferee, the IRS

next argues it is entitled to rely upon the "good faith" defense having extended value, in good faith,

---

[13] In fraudulent transfer cases involving a Ponzi scheme, courts typically infer fraudulent intent because "[a] Ponzi scheme is by definition fraudulent."  *Cuthill v. Greenmark (In re World Vision Entertainment, Inc.)*, 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002).  For that reason, "any acts taken in furtherance of [a] Ponzi scheme…are also fraudulent.  Every payment made by the debtor to keep the scheme on-going [is] made with actual intent to hinder, delay, or defraud creditors, primarily the new investors."  *Id.*

[14] Doc. No. 27, p. 3 ("The United States admits that Vance Moore, Jr., conspired to operate the debtor as a Ponzi scheme as described in the ten-count indictment in *United States v. Moore*, Case No. 1:09-cr-881-TPG (S.D.N.Y.), to which Moore pleaded guilty on October 19, 2010.")

[15] On October 7, 2010, the Chapter 7 trustee filed his Motion for Partial Summary Judgment (Doc. No. 15).  On October 18, 2010, the IRS filed its Motion for Summary Judgment and supporting memorandum of law (Doc. No. 18).  On November 5, 2010, the IRS filed its Opposition Response to the trustee's motion (Doc. No. 27).  On November 12, 2010, the Chapter 7 trustee filed its Response to the IRS' opposition response (Doc. No. 28).  On November 16, 2010, the Chapter 7 trustee filed another Motion for Partial Summary Judgment (Doc. No. 29).  And on December 10, 2010, the IRS filed another response to the trustee's second motion for partial summary judgment (Doc. No. 32).

[16] Doc. No. 15.

and without notice of the true source of the funds.  The Chapter 7 trustee's responses[17] argue that the IRS was indeed the initial transferee, that BDL was a "mere conduit" between the debtor and the IRS, and that, even if the Court finds the IRS was a subsequent transferee, the IRS's good faith defense fails as a matter of law because the IRS provided no value to the debtor.  The Court will first address whether the IRS was an "initial transferee" under § 550(a), and, because the Court finds it was not, will then address the IRS' good faith defense under § 550(b).

Under Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[18]  The moving party has the burden of establishing the right to summary judgment.[19]  In determining entitlement to summary judgment, a court must view all evidence and make all reasonable inferences in favor of the party opposing the motion.[20]  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."[21]  A material factual dispute thus precludes summary judgment.[22]

Section 550(a) of the Bankruptcy Code provides that, to the extent a transfer is avoided under § 548, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from," among others, "the initial transferee of such transfer."  Section 550(b) provides a good faith defense to immediate or mediate transferees of the initial transferee, but not to the initial transferee itself.  Under that section, a trustee may not recover from a subsequent transferee that establishes it took property (1) for value, (2) in good faith, and (3) without knowledge of the voidability of the transfer.[23]  Conversely, if a transfer is avoidable under

---

[17] Doc. Nos. 27 and 29.
[18] Fed. R. Civ. P. 56.
[19] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).
[20] *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (*citing Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavaro*, 38 F.3d 1571, 1578 (11th Cir. 1994)).
[21] *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 572, 587 (1986).
[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[23] *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 698, 703 (11th Cir. 2005).

§ 548, the trustee can *always* recover from initial transferees under § 550. Here, if the trustee cannot establish that the IRS was the initial transferee, the IRS then bears the burden of proving it took the debtor's funds in good faith, without knowledge of the voidability of the transfer, and for value.[24]

The Bankruptcy Code does not define "initial transferee" as used in § 550(a). The Eleventh Circuit Court of Appeals, however, recently has issued a helpful opinion defining the term and establishing three principles courts should use in determining who is an "initial transferee."[25] First, the Eleventh Circuit Court of Appeals observed that "a literal or rigid interpretation of the statutory term 'initial transferee' in § 550(a) means that the first recipient of the debtor's fraudulently-transferred funds is an 'initial transferee.'"[26]

Second, the Eleventh Circuit Court of Appeals has "carved out an equitable exception to the literal statutory language of 'initial transferee,' known as the mere conduit or control test, for initial recipients who are 'mere conduits' with no control over the fraudulently-transferred funds."  The Court explained that:

> [i]n doing so, this Court has adopted a flexible, pragmatic, equitable approach of looking beyond the particular transfer in question to the circumstances of the transaction in its entirety. The mere conduit or control test is a judicial creation that is not based in statutory language, but is an exception based on the bankruptcy courts' equitable powers. Equitable considerations play a major role in the mere conduit or control test because it would be inequitable to hold an initial recipient of the debtor's fraudulently-transferred funds liable where that recipient could not ascertain the transferor debtor's solvency, lacked any control over the funds, or lacked knowledge of the source of the funds.[27]

---

[24] The IRS mistakenly asserts the trustee bears the burden of proving the *absence* of its good faith. Although § 550(b) does not clearly establish the burden of proof, like the good faith defense provided by § 548(c), most courts hold good faith is a defense that must be raised by a subsequent transferee. *E.g., IRS v. Nordic Village, Inc. (In re Nordic Village, Inc.)*, 915 F.2d 1049, 1055 (6th Cir. 1990); *In re Richmond Produce Co.*, 195 B.R. 455, 463 (N.D. Cal. 1996); *In re Custom Contractors, LLC* 439 B.R. 544, 549 (Bankr. S.D. Fla. 2010); *In re American Way Serv. Corp.*, 229 B.R. 496, 525 (Bankr. S.D.N.Y 1999); *In re Data Lease Financial Corp.*, 176 B.R. 285, 287 (Bankr. S.D. Fla. 1994); *see also* Collier on Bankruptcy ¶ 550.03[5] (stating "the better-reasoned position is that, once the trustee has avoided a transfer and established that the property has been transferred to an immediate or mediate transferee, the transferee has the burden to show that it took (1) for value, (2) in good faith and (3) without knowledge of the voidability of the transfer.").

[25] *Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312 (11th Cir. 2010).

[26] *Id.* at 1322 (citations omitted).

[27] *Id.* (citations omitted).

Third, the Eleventh Circuit Court of Appeals "considers whether the intermediary 'acts without bad faith, and is simply an innocent participant' to the fraudulent transfer."[28]  In concluding that good faith is a requirement under the mere conduit or control test, the Court of Appeals held that initial recipients asserting the mere conduit exception to § 550(a)(1)'s statutory language must establish both "(1) that they did not have control over the assets received, i.e., that they merely served as a conduit for the assets that were under the actual control of the debtor-transferor *and* (2) that they acted in good faith and as an innocent participant in the fraudulent transfer."[29]

Applying the first *Harwell* factor, BDL was the initial transferee of the funds ultimately transferred to the IRS.  The United States District Court for the District of Columbia reached the same conclusion under identical facts.[30]  In *Auto-Pak*, the eventual debtor, Auto-Pak, Inc., was controlled by a man named Richard DeFranco, who also owned and operated a second company named Stern Chemical, Inc.  Stern Chemical owed the IRS money.  DeFranco purchased a cashier's check, made payable to the IRS, with a check drawn on Auto-Pak's account.  He then wrote on the cashier's check "RE: STERN CHEMICAL 8309 PERIOD" and sent the cashier's check to the IRS.  There was no reference on the check or elsewhere that indicated the source of the funds was Auto-Pak.  The *Auto-Pak* court found that in transferring a check with "RE: STERN CHEMICAL 8309 PERIOD" with no indication that Auto-Pak was the drawer, "Defranco essentially took control of the funds underlying the cashier's check and negotiated them on behalf of Stern Chemical and to the benefit of the [IRS].  He thereby created at least one mediate transferee—himself or Stern Chemical—and insulated the IRS from the fraudulent conveyance."[31]

*Auto-Pak*'s simple, pragmatic analysis is in line with this Court's view of the facts here.  Moore wore at least two corporate hats in the course of this brief transaction: one as ATM Financial's principal and another as BDL's.  He went into the bank as ATM Financial's principal,

---

[28] *Id.* at 1323 (citations omitted).
[29] *Id.* (emphasis original).
[30] *Ross v. United States (In re Auto-Pak, Inc.)*, 73 B.R. 52, 54 (D.C. 1987).
[31] *Id.*

withdrew funds from ATM's bank account, and used the monies to purchase the cashier's check. At some point after Moore received the cashier's check, he "transferred" the funds to BDL to submit to the IRS.  He then put on his BDL hat, wrote the IRS a letter on BDL letterhead, and mailed the check and letter to the IRS on behalf of BDL, thereby demonstrating control over the funds in his capacity as BDL's principal.  BDL, not the IRS, was the initial transferee of the debtor's funds.

The next part of the analysis under *Harwell*—and the crux of the Chapter 7 trustee's argument—is to assess whether the equities of this case merit this Court finding that BDL was a mere conduit or lacked sufficient control of the funds to be deemed the initial transferee.  The trustee must, in order to take advantage of this equitable exception to § 550(a)(1)'s statutory language, establish both (1) that BDL did not have control over the funds transferred to the IRS, i.e., "that [it] merely served as a conduit for the assets that were under the actual control of the debtor-transferor," *and* (2) that BDL "acted in good faith and as an innocent participant in the fraudulent transfer."[32]  The Court can make neither finding.

The standard set forth in *Harwell* makes clear that the purpose of the mere conduit or control test is to avoid unduly harsh outcomes for unwitting recipients.  As the *Harwell* court stated, "it would be inequitable to hold an initial recipient of the debtor's fraudulently-transferred funds liable where that recipient could not ascertain the transferor debtor's solvency, lacked any control over the funds, or lacked knowledge of the source of the funds."[33]  The purpose thus is *not* to enable the trustee to more easily skip over insolvent entities to reach deep pockets, which is in essence what the Chapter 7 trustee is attempting here.

Moore clearly knew the debtor was insolvent, obviously had control over the funds transferred, and, of course, knew ATM Financial obtained the monies through a fraudulent Ponzi

---

[32] *Harwell*, 628 F.3d at 1323.
[33] *Id.* at 1323.

scheme.  Moore was the only person involved in this "transaction" between the debtor and BDL.  It is disingenuous for the Chapter 7 trustee to claim BDL somehow did not have control of the funds transferred to the IRS.  Of course it did.  Moore controlled both the debtor and BDL and could have easily not transferred the cashier's check to the IRS or drawn another made out to whomever Moore wished to pay.  Furthermore, BDL benefited greatly from this transfer, to the tune of $536,686.91.  BDL was thus more than just a mere conduit, it was the initial transferee.

Moreover, the Chapter 7 trustee himself has already established Moore's/the debtor's bad faith in this transaction.  The trustee here is in the awkward spot of arguing in favor of BDL meeting the mere conduit and control test, and thus arguing that BDL acted in good faith, while simultaneously asserting (successfully) that every transaction undertaken by an entity controlled by BDL's principal was tainted with actual fraudulent intent under the Ponzi scheme presumption.  The trustee cannot have it both ways, and the trustee has not established that Moore/BDL acted in good faith.[34]  At the policy level, the trustee's attempt to raise the mere conduit exception here turns the rationale for the exception on its head.  He is seeking to except from liability a (likely insolvent) non-party once controlled by the debtor's principle to better get at funds held by the IRS.  As already explained above, this is not what *Harwell* had in mind.

In sum, the Court finds BDL was the initial transferee of the funds ultimately remitted to the IRS from the debtor.  Because Moore/BDL lacked good faith and was more than just a mere conduit to this transaction, the Court will refrain from using its equitable powers to except Moore/BDL from initial transferee liability under § 550(a).  As a consequence, the IRS, as a secondary or intermediate transferee, is entitled to assert the good faith defense provided in § 550(b).

---

[34] To be fair to the Chapter 7 trustee, *Harwell* was not issued until December 29, 2010, which was the first time the Eleventh Circuit Court of Appeals expressly held that good faith is a requirement under the mere conduit or control test.  628 F.3d at 1323.  The Court of Appeals, however has previously indicated that good faith was a requirement in *IBT Int'l, Inc. v. Northern (In re International Admin. Services, Inc.)*, 408 F.3d 689, 705 (11th Cir. 2005) (stating "the conduit rule presumes that the facilitator of funds acts without bad faith, and is simply an innocent participant to the underlying fraud.").  Regardless, the Court cannot fathom a credible argument that BDL/Moore acted in good faith.

Section 550(b) provides that a trustee may not recover from a subsequent transferee "that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer voided."  Here, there is no question the IRS took in good faith and without knowledge of the voidability of the transfer.  Neither the cashier's check nor the letter sent to the IRS on BDL letterhead gave any indication that the debtor provided the monies.  Revenue Agent Bisbal's knowledge that Moore ran both the debtor and BDL is not, by itself, enough to put the IRS on even inquiry notice of the voidability of the transfer.

The IRS also unquestionably accepted the funds from BDL "for value"—it extinguished an antecedent debt owed by BDL.  As the trustee himself stated in a footnote to one of his responses, "[i]f the IRS was not a transferee, but rather was a transferee of the initial transferee, then presumably it would have a complete defense, as the secondary transferee has a defense to the action if it took the secondary transfer without knowledge of the avoidability of the initial transfer *and gave at least some value to the initial transferee in exchange*."[35]  The trustee is correct that a secondary transferee need only provide value to the initial transferee to succeed on its good faith defense.  The plain text of § 550(b)(1) makes this clear.  It states that "[t]he trustee may not recover under section (a)(2) of this [sub]section," that is, from "any immediate or mediate transferee of such initial transferee," that "takes for value…."  It does not require that the immediate or mediate transferee provide value *to the debtor*, only that it take for value.[36]

Because the IRS has established that it was not the initial transferee and that it took the funds from BDL for value, in good faith, and without knowledge of the avoidability of the initial transfer, the IRS has established its good faith defense under § 550(b)(1) and may not be held liable for return of the fraudulently transferred funds.  The Court accordingly will grant the IRS' motion

---

[35] Doc. No. 28, p. 2, fn. 1 (emphasis added).

[36] *E.g.*, *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890 (7th Cir. 1988); *Geneva v. Gottlieb (In re Orange County Sanitation, Inc.)*, 221 B.R. 323, 328 (Bankr. S.D.N.Y. 1997); *The De Rochfort Co. Ltd. v. Sunshine State Bank (In re De Rochfort Co. Ltd.)*, 22 B.R. 826, 827 (Bankr. S.D. Fla. 1982); *see also* Collier on Bankruptcy ¶ 550.03[1] (stating "The term 'value' in this subsection is different from and does not mean value to the debtor; a natural reading of subsection (b) looks to what the transferee gave up rather than what the debtor received.").

for summary judgment[37] and deny the Chapter 7 trustee's second motion for partial summary judgment.[38]  The result is that a final summary judgment in favor of the IRS and against the trustee shall be entered simultaneously.

DONE AND ORDERED in Orlando, Florida, March 1, 2011.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Debtor:  ATM Financial Services, LLC, PO Box 490510, Leesburg, FL 34748

Debtor's Attorney:  Peter Hill, Wolff Hill McFarlin & Herron PA, 1851 W. Colonial Dr., Orlando, FL 32804

Defendant's Attorney:  Philip Doyle, U.S. Department of Justice, Tax Division, P.O. Box 14198, Ben Franklin Station, Washington, D.C. 20044.

Plaintiff:  Soneet R. Kapila, 1000 South Federal Highway, Suite 200, Ft. Lauderdale, FL 33316

Plaintiff's Attorney:  Patrick S. Scott, Gray Robinson, P.A., 401 E. Las Olas Blvd., Suite 1850, Ft. Lauderdale, FL 33301

---

[37] Doc. No. 18.
[38] Doc. No. 29.